Melissa Goodwin, Justice
The City of New Braunfels and Y.C. Partners, Ltd., d/b/a Yantis Company appeal from the trial court's declaratory judgment in favor of Carowest Land, Ltd., that included a declaration that a contract between the City and Yantis was void and an award of attorney's fees, costs, and expenses against the City and Yantis jointly and severally. For the following reasons, we vacate the trial court's judgment for lack of subject matter jurisdiction and remand the case to the trial court for further proceedings consistent with this opinion.
BACKGROUND
This case is among a series of cases between Carowest, the City, and Yantis.
*167 Because the relevant facts that form the basis of Carowest's claims were recited in a prior opinion issued by this Court, we do not recite them here except to the extent necessary to describe the relevant background. See Tex. R. App. P. 47.1 ; see generally City of New Braunfels v. Carowest Land, Ltd. , 432 S.W.3d 501 (Tex. App.-Austin 2014, no pet.) ( Carowest I ).
The heart of the parties' dispute in this case concerns a rule 11 agreement between the City and Yantis that was filed in the 2010 lawsuit brought by Carowest against the City and Yantis as to the South Tributary flood-control project (STP). See Carowest I , 432 S.W.3d at 535 n.131. Counsel for the City and Yantis discussed and signed the rule 11 agreement on behalf of their clients during the day of May 9, 2011, the same day that the city council held its meeting in the evening in which it approved Yantis as the contractor for the North Tributary flood-control project. In the rule 11 agreement, Yantis agreed "to fully release the City of New Braunfels from Yantis' asserted delay claim on the South Tributary project if, after all proper and legal process is completed, Yantis is awarded the North Tributary contract (with alternate three) by the City of New Braunfels at the New Braunfels' City Council meeting scheduled for this evening." Alternate three was for the optional work of delivering a specified quantity of excavated land (fill) from the project to Carowest. The rule 11 agreement further provided: "If the contract is not awarded to Yantis this evening, this offer is hereby withdrawn." Yantis, the contractor on the STP, had submitted a sealed bid on April 29, 2011, seeking to be the contractor on the North Tributary project.
The agenda for the May 9, 2011, city council meeting included notice that the city council would discuss and consider the "approval of a contract with Yantis Company for construction services on the North Tributary Regional Flood Control Project." Immediately prior to consideration of the award of the North Tributary Contract during the city council meeting, the city council went into a closed meeting without announcing the basis for doing so. See Tex. Gov't Code § 551.101 (requiring announcement that closed meeting will be held and identification of "section or sections of this chapter under which the closed meeting is held").
After the closed meeting concluded and the open session was reconvened, the mayor began by stating that the "Executive Session caption under which we went under" was to "Item C, deliberate pending/contemplated litigation, settlement offers, and matters concerning privileged and unprivileged client information." See id. § 551.071(1) (authorizing closed meeting to consult with attorney about "pending or contemplated litigation" or "settlement offer"). The city council then discussed the award of the North Tributary Contract to Yantis without reference to the rule 11 agreement. The city engineer presented the bids that the City received on April 29, 2011, the range of those bids, and the time line for the project, and advised the city council that Yantis submitted the lowest bid with the recommended alternates. The city council members then discussed the bids for the North Tributary Contract and Yantis's bid in relation to actual cost and quality of work on the completed STP. Following this discussion, the city council voted to award the North Tributary Contract to Yantis with one city council member voting against the award.
The City provided a copy of the rule 11 agreement to Carowest the day after the city council's meeting. Carowest thereafter filed amended pleadings in the 2010 lawsuit, *168 asserting claims under the Uniform Declaratory Judgments Act (UDJA), see Tex. Civ. Prac. & Rem. Code §§ 37.001B.011, including seeking declarations that the North Tributary Contract was void based on the City's alleged violations of the Texas Open Meetings Act (TOMA), see Tex. Gov't Code §§ 551.001 -.146, and competitive bidding requirements in the Texas Local Government Code, see Tex. Loc. Gov't Code § 252.043(a) (requiring contract to be awarded to "lowest responsible bidder"). Carowest asserted its standing to complain about the North Tributary Contract based on its status as a "property tax paying resident," see id. § 252.061(a), and a third party beneficiary of the North Tributary Contract. Carowest urged it was a third party beneficiary of the contract because the City had agreed to provide it with fill from the North Tributary project. The parties thereafter agreed to sever Carowest's UDJA claims related to the City's alleged TOMA violations and the validity and legality of the North Tributary Contract into a new cause number that is the subject of this appeal.
The jury trial in the severed case occurred in October 2015. The trial court granted a directed verdict on Carowest's declaratory judgment claim "related to the City's improper TOMA procedure," see Tex. Gov't Code § 551.101, and submitted other claims of Carowest to the jury. The jury found that:
• In awarding the North Tributary Contract to Yantis, the City "fail[ed] to award the contract to the lowest responsible bidder."
• In awarding the North Tributary Contract to Yantis, the City "fail[ed] to provide all bidders with the opportunity to bid on the same items on equal terms and have bids judged according to the same standards as set forth in the specifications."
• The City "allow[ed] Yantis to submit additional consideration for its bid for the North Tributary Contract after April 29, 2011 at 10:00 a.m."
• Yantis "provide[d] a release of the Delay Claims to the City in exchange for the City Council's vote to award it the North Tributary Contract on May 9, 2011."
• The City "consider[ed] the Rule 11 Agreement when judging Yantis'[s] bid for the North Tributary Project."
Concerning the alleged TOMA violations as to the city council meeting on May 9, 2011, the jury found that the agenda for the meeting did not provide "full and adequate notice that the City Council would be considering the Carowest/Yantis suit"; that the Certified Agenda for the closed session did not include a statement of the subject matter of each deliberation, a record of any further action taken, or an announcement by the presiding officer of the date and time at the beginning and end of the meeting; that the city council discussed financial considerations of the North Tributary Contract and the rule 11 agreement during the closed session; and that the City agreed to award the North Tributary Contract to Yantis in exchange for Yantis's release of the Delay Claims on May 9, 2011. The jury, however, also found that the City did not make a final decision related to the award of the North Tributary Contract during the closed session.
A bench trial on attorney's fees, costs, and expenses occurred in December 2015. The trial court thereafter entered declaratory judgment in favor of Carowest, making declarations in accordance with the jury's verdict and declaring that "the process by which the City of New Braunfels awarded the contract for the North Tributary Project was improper, illegal, and in violation of the Texas Open Meetings Act, the Texas competitive bidding laws, the *169 Texas Penal Code, and public policy" and that the North Tributary Contract was void. The trial court's other declarations included that the City had violated sections 551.002, 551.041, 551.101, 551.103 of TOMA, see Tex. Gov't Code §§ 551.002, .041, .101., .103; the City and Yantis violated section 36.02 of the Texas Penal Code, see Tex. Penal Code § 36.02 ; the City violated section 271.0065 of the Texas Local Government Code, see Tex. Loc. Gov't Code § 271.0065 ; and the City violated section 252.043 of the Texas Local Government Code, see id. § 252.043. The trial court also awarded attorney's fees, costs, and expenses against the City and Yantis jointly and severally and entered findings of fact and conclusions of law in support of its award of attorney's fees, costs, and expenses. These appeals followed.
ANALYSIS
The City's Appeal
Because it is dispositive, we limit our analysis to the City's first issue.[1] See Tex. R. App. P. 47.1. In its first issue, the City argues that Carowest's claims against the City are barred by governmental immunity and that the trial court, thus, lacked subject matter jurisdiction over those claims. In the severed case, Carowest brought its claims solely under the UDJA.
Standard of Review and Applicable Law
Whether a trial court has subject matter jurisdiction is a question of law that we review de novo. See Texas Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 226 (Tex. 2004). "The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction." Heckman v. Williamson Cty. , 369 S.W.3d 137, 150 (Tex. 2012) ; see, e.g. , Ex parte Springsteen , 506 S.W.3d 789, 798 n.50 (Tex. App.-Austin 2016, pet. denied) (citing City of Elsa v. Gonzalez , 325 S.W.3d 622, 625 (Tex. 2010) (per curiam)). In the procedural posture of this appeal from a final judgment, we consider the parties' evidence to the extent necessary to resolve challenged jurisdictional facts, taking as true all evidence favorable to Carowest and indulging every reasonable inference and resolving any doubts in its favor. See Bland Indep. Sch. Dist. v. Blue , 34 S.W.3d 547, 555 (Tex. 2000) ; see also Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 635 (Tex. 2012) (describing plea to jurisdiction practice in Texas when challenge is to existence of jurisdictional facts); Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality , 307 S.W.3d 505, 513 (Tex. App.-Austin 2010, no pet.) (describing standard of review when considering jurisdictional evidence); Combs v. Entertainment Publ'ns, Inc. , 292 S.W.3d 712, 719 (Tex. App.-Austin 2009, no pet.) (same).
When it applies, governmental immunity protects political subdivisions of the State, such as the City, from suit, depriving the court of subject matter jurisdiction. See Wichita Falls State Hosp. v. Taylor , 106 S.W.3d 692, 694 n.3 (Tex. 2003) (explaining that governmental immunity protects political subdivisions of state from suit);
*170 EMCF Partners, LLC v. Travis Cty. , No. 03-15-00820-CV, 2017 WL 672457, 2017 Tex. App. LEXIS 1261 (Tex. App.-Austin Feb. 15, 2017, no pet.) (mem. op.) (same). Governmental immunity generally applies to municipalities when they are "performing 'governmental' as opposed to 'proprietary' functions." City of Austin v. Utility Assocs. , 517 S.W.3d 300, 307-08 (Tex. App.-Austin 2017, no pet. h.).[2]
The UDJA gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code § 37.003(a). "A person interested under a ... written contract ... may have determined any question of construction or validity arising under the ... contract ... and obtain a declaration of rights, status, or legal relations thereunder." Id. § 37.004(a). The UDJA, however, does not create or augment a trial court's subject matter jurisdiction-it is "merely a procedural device for deciding cases already within a court's jurisdiction." Texas Ass'n of Bus. v. Texas Air Control Bd. , 852 S.W.2d 440, 444 (Tex. 1993) ; see Texas Dep't of Transp. v. Sefzik , 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam) (noting that Texas Supreme Court has consistently stated that "UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction' "). Accordingly, the UDJA "is not a general waiver of sovereign immunity" but only waives "immunity for certain claims." Texas Parks & Wildlife Dep't v. Sawyer Trust , 354 S.W.3d 384, 388 (Tex. 2011) ; McLane Co. v. Texas Alcoholic Bev.Comm'n , 514 S.W.3d 871, 876-77 (Tex. App.-Austin 2017, pet. filed) ; see Ex Parte Springsteen , 506 S.W.3d at 798-99 ("[T]he UDJA's sole feature that can impact trial-court jurisdiction to entertain a substantive claim is the statute's implied limited waiver of sovereign or governmental immunity that permits claims challenging the validity of ordinances or statutes." (citing Texas Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 634-35 (Tex. 2010) (citing Tex. Civ. Prac. & Rem. Code § 37.006(b) ))).
Further, the UDJA does not waive immunity "when the plaintiff seeks a declaration of his or her rights under a statute or other law." Sefzik , 355 S.W.3d at 621 ; see City of El Paso v. Heinrich , 284 S.W.3d 366, 372-73 (Tex. 2009) (explaining that "government entities themselves-as opposed to their officers in their official capacity-remain immune from suit" against claims brought under UDJA that challenge government's actions taken under law); McLane Co. , 514 S.W.3d at 876-77 (concluding that "UDJA does not waive sovereign immunity for 'bare statutory construction claims' "). Such a claim asserted directly against the governmental entity is barred by immunity unless the Legislature has expressly waived immunity elsewhere as to that particular claim. Sefzik , 355 S.W.3d at 621-22 ; see Sawyer Trust , 354 S.W.3d at 388 (explaining that "sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right to relief against the State for which the Legislature has not waived sovereign immunity" (citing City of Hous. v. Williams , 216 S.W.3d 827, 828-29 (Tex. 2007) (per curiam))). "And a litigant's *171 couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." Sawyer Trust , 354 S.W.3d at 388 (citing Heinrich , 284 S.W.3d at 370-71 ; Texas Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002) ).
The City also challenges the trial court's jurisdiction under the redundant remedies doctrine, which provides that "courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." Patel v. Texas Dep't of Licensing & Regulation , 469 S.W.3d 69, 79 (Tex. 2015) (citing Texas Mun. Power Agency v. Public Util. Comm'n of Tex. , 253 S.W.3d 184, 200 (Tex. 2007) ). "The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that permits the parties to raise their claims through some avenue other than the UDJA." Id. (citing Aaron Rents, Inc. v. Travis Cent. Appraisal Dist. , 212 S.W.3d 665, 669 (Tex. App.-Austin 2006, no pet.) (en banc); Alamo Express, Inc. v. Union City Transfer , 158 Tex. 234, 309 S.W.2d 815, 827 (1958) ); see EMCF Partners , 2017 WL 672457, at *6-7, 2017 Tex. App. LEXIS 1261, at *19-22 (explaining and applying redundant remedies doctrine).
Carowest's Claims against the City
As previously stated, Carowest's claims against the City seeking to have the North Tributary Contract declared void were based on factual allegations of illegality, bribery, fraud, and alleged violations of public policy, TOMA, and the Local Government Code. Carowest does not dispute that the City was performing governmental functions when it entered into the North Tributary Contract. See Carowest I , 432 S.W.3d at 519-20 (explaining distinction between governmental and proprietary functions and concluding that "Carowest has not asserted claims predicated on anything but governmental functions"). Thus, it was Carowest's burden to establish that the City's governmental immunity from Carowest's claims was waived. In that regard, Carowest does not contend that the City's governmental immunity was waived for independent causes of action of illegality, bribery, fraud, or violations of public policy but that its allegations of the City's improper and illegal conduct-and corresponding jury findings-supported the trial court's jurisdiction to declare that the City had violated TOMA and the Local Government Code, which declarations supported the trial court's ultimate declaration that the North Tributary Contract was void.
Focusing on the underlying nature of its claims, we observe that Carowest did not challenge the validity of a statute or other law but, in substance, complained of the City's conduct-that the City by acting illegally or improperly violated laws. See Sefzik , 355 S.W.3d at 621 ; Sawyer Trust , 354 S.W.3d at 388 ; McLane , 514 S.W.3d at 876-77 (concluding that UDJA does not waive immunity for " 'bare statutory construction claims' "). Carowest also did not assert ultra vires claims against public officials. See Heinrich , 284 S.W.3d at 372-73 ; Utility Assocs. , 517 S.W.3d at 308-10 (describing ultra vires doctrine). And governmental entities like the City generally are immune from UDJA claims seeking to void contracts. See Texas Logos, L.P. v. Texas Dep't of Transp. , 241 S.W.3d 105, 119-21 (Tex. App.-Austin 2007, no pet.) (explaining rationale for governmental immunity in context of claims seeking to nullify or establish validity of contract made for benefit of state); Utility Assocs. , 517 S.W.3d at 317 (same). In this context, Carowest's UDJA claims asserted *172 directly against the City are barred by governmental immunity. See Sefzik , 355 S.W.3d at 621-22 ; Taylor , 106 S.W.3d at 694 n.3 ; Texas Logos, L.P. , 241 S.W.3d at 119-21.
Carowest relies on the express waivers of governmental immunity in TOMA and chapter 252 of the Local Government Code that provide private causes of action against government entities to support the trial court's jurisdiction.[3] Section 551.142 of TOMA authorizes "an interested person" to "bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body." See Tex. Gov't Code § 551.142(a). Similarly, relevant to this appeal, section 252.061 of the Texas Local Government Code authorizes "any property tax paying resident of the municipality" to seek injunctive relief from the performance of a contract that "is made without compliance with this chapter." See Tex. Loc. Gov't Code § 252.061. Although both provisions provide an express statutory waiver of immunity, neither waives immunity for declaratory relief. Compare Tex. Gov't Code § 551.142(a) ; Tex. Loc. Gov't Code § 252.061, with Tex. Loc. Gov't Code § 245.006(a) ("This chapter may be enforced only through mandamus or declaratory or injunctive relief."); Tex. Gov't Code § 552.3215(b) (authorizing "action for a declaratory judgment or injunctive relief ... against a governmental body that violates this chapter"). "It is the Legislature's sole prerogative to decide whether, to what extent, or with what conditions or procedures immunity should be waived, and we are to defer to those judgments." Utility Assocs. , 517 S.W.3d at 313-14 ; see id. at 318-19 (concluding that section 252.061 authorizes remedy of injunctive relief but not declaratory relief and noting that declarations that plaintiffs seek are "legal conclusions already subsumed in the cause of action for injunctive relief that Section 252.061 creates").
In decisions issued more recently than Carowest I , the Texas Supreme Court has made clear that the types of relief expressly made available by statute operate as the boundaries for a statute's waiver of immunity. See Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty. , 449 S.W.3d 98, 109-10 (Tex. 2014). In Zachary Construction , the Texas Supreme Court considered the scope of the waiver of immunity from suit that is contained in chapter 271 of the Texas Local Government Code. Id. at 101. As an initial matter, the court considered whether a statute's "limitations on recovery help define and restrict the scope of the waiver of immunity" and concluded that it did. Id. at 105.[4] Relevant to the *173 court's analysis in that case, section 271.152 provides an express waiver of immunity:
A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.
Tex. Loc. Gov't Code § 271.152. Section 271.153, titled "Limitations on Adjudication Awards," then sets the types of recoverable damages and relief that are available against a local governmental entity for breach of contract. Id. § 271.153. Focusing on the phrase "subject to the terms and conditions of this subchapter" in section 271.152, the court explained that " Section 271.152 uses Section 271.153 to further define the extent immunity has been waived" and concluded that "the Act does not waive immunity from suit on a claim for damages not recoverable under Section 271.153." Zachry Constr. , 449 S.W.3d at 109-10 ; see Tooke v. City of Mexia , 197 S.W.3d 325, 328-29 (Tex. 2006) (observing that "immunity is waived only by clear and unambiguous language" and concluding that City's immunity from suit had not been waived under chapter 271 because claim did not seek type of damages available within scope of waiver).
Instructed by the Texas Supreme Court's directive in determining the scope of an express waiver, we conclude that section 551.142 of TOMA and section 252.061 of the Texas Local Government Code set the boundaries of their waivers of immunity to the express relief provided in the statutes-injunctive and mandamus relief-and that neither statute extends the scope of waiver to include the declaratory relief that Carowest sought and the trial court awarded here. Zachry Constr. , 449 S.W.3d at 109-10 ; Tooke , 197 S.W.3d at 328-29. Although Carowest"filed an application for temporary restraining order (TRO) seeking to halt all work on the North Tributary Project" in the underlying proceeding prior to the severance, the trial court denied Carowest's request. See Carowest I , 432 S.W.3d at 512. After the severance, Carowest did not seek injunctive relief in the severed case, which is the subject of this appeal.
We also are bound by the Texas Supreme Court's opinion in Patel. In that case, the court explained that, under the redundant remedies doctrine, courts do not have jurisdiction over a claim brought under the UDJA against a governmental entity "when the same claim could be pursued through different channels." See 469 S.W.3d at 79 ; see also EMCF Partners , 2017 WL 672457, at *6-7, 2017 Tex. App. LEXIS 1261, at *19-22 (applying Patel to conclude redundant remedies doctrine stood as additional bar to UDJA claim where plaintiff did not rely on "procedural vehicles and their concomitant statutory waivers of immunity" but "instead [relied] solely on the UDJA"); McLane Co. , 514 S.W.3d at 877-78 (concluding that trial court lacked jurisdiction to hear ultra vires claims because claims could be pursued through explicit waiver of immunity under Public Information Act); Riley v. Commissioners Court , 413 S.W.3d 774, 777-78 (Tex. App.-Austin 2013, pet. denied) (concluding that declarations that TOMA was violated were redundant of relief available under TOMA). Because the legislature expressly *174 waived immunity under chapter 252 and TOMA, the "underlying nature" of Carowest's claims could have been brought directly against the City under those statutes, but Carowest chose not to avail itself of the available statutory channels for pursuing its claims, relying instead solely on the UDJA. See Tex. Gov't Code § 551.142(a) ; Tex. Loc. Gov't Code § 252.061 ; Sawyer Trust , 354 S.W.3d at 388 (looking to "underlying nature" of UDJA claims). In this procedural context, the redundant remedies doctrine is a further bar to Carowest's UDJA claims. See Patel , 469 S.W.3d at 79 ; EMCF Partners , 2017 WL 672457, at *6-7, 2017 Tex. App. LEXIS 1261, at *19-22.
Law-of-the-Case Doctrine
Carowest argues that the law-of-the-case doctrine bars a second appeal on the City's jurisdictional issue because we concluded that the trial court had jurisdiction over Carowest's UDJA claims in our opinion in Carowest I . In our resolution of that interlocutory appeal, we concluded that the trial court "did not err in concluding that Carowest had standing to bring a claim under chapter 252 and, in turn, denying the City's plea to the jurisdiction as to Carowest's declaratory claim regarding the North Tributary Project contract." See 432 S.W.3d at 534. We similarly concluded that the trial court did not err in denying the City's plea to the jurisdiction as to Carowest's declaratory claims concerning TOMA violations. Id. at 531-32.
"The 'law of the case' doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." Hudson v. Wakefield , 711 S.W.2d 628, 630 (Tex. 1986). "Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case." Gotham Ins. Co. v. Warren E&P, Inc. , 455 S.W.3d 558, 562 n.8 (Tex. 2014) ; see City of Hous. v. Jackson , 192 S.W.3d 764, 769 (Tex. 2006) (explaining that "conclusion reached by intermediate appellate court does not bar reconsideration of the initial conclusion in a subsequent appeal, and the decision to revisit the conclusion is left to the discretion of the court under the particular circumstances of each case").
Under the particular circumstances of this case, we conclude that the law-of-the-case doctrine does not preclude us from revisiting our conclusions concerning the trial court's subject matter jurisdiction over Carowest's UDJA claims. See Jackson , 192 S.W.3d at 769. In contrast to our analysis here, the parties did not raise, and we did not consider, the redundant remedies doctrine in our jurisdictional analysis in the interlocutory appeal. See, e.g. , Finance Comm'n of Tex. v. Norwood , 418 S.W.3d 566, 580 (Tex. 2013) (addressing issue of subject matter jurisdiction that was not raised by parties or addressed by lower courts and observing that issue of subject matter jurisdiction "can be-and if in doubt, must be-raised by a court on its own at any time"); Ex parte Springsteen , 506 S.W.3d at 798 n.50 ; Good Shepherd Med. Ctr., Inc. v. State , 306 S.W.3d 825, 837 (Tex. App.-Austin 2010, no pet.) ("[S]ubject-matter jurisdiction cannot be waived or conferred by agreement." (citing Texas Ass'n of Bus. , 852 S.W.2d at 443-46 )).
Further, after we issued our opinion in Carowest I , the Texas Supreme Court delivered its opinions in Zachry Construction and Patel . "As an intermediate appellate court, we are not free to mold Texas law as we see fit but must *175 instead follow the precedents of the Texas Supreme Court unless and until the high court overrules them or the Texas Legislature supersedes them by statute." Petco Animal Supplies, Inc. v. Schuster , 144 S.W.3d 554, 565 (Tex. App.-Austin 2004, no pet.). Thus, we are bound to follow the Texas Supreme Court's opinions in Zachry Construction and Patel in our resolution of this appeal.[5] See itation case-ids="9183804" index="79" url="https://cite.case.law/sw3d/144/554/#p565">id. ; see also Smith v. East , 411 S.W.3d 519, 526-27 (Tex. App.-Austin 2013, pet. denied) ("We are thus bound to follow [precedent from Texas Supreme Court] unless and until the Texas Supreme Court instructs us otherwise.").
Instructed by the Texas Supreme Court's opinions in Patel and Zachry Construction , we conclude that the trial court did not have subject matter jurisdiction over Carowest's UDJA claims against the City and sustain the City's first issue. See Patel , 469 S.W.3d at 79 ; Zachry Constr., 449 S.W.3d at 109-10.
Yantis's Appeal
In its issues on appeal, Yantis challenges Carowest's standing to bring its UDJA claims against Yantis.[6] Among its arguments, Yantis argues that taxpayer standing does not allow suits against private parties, that Carowest lacks standing because it cannot show a particularized injury caused by Yantis, and that Carowest lacks third party beneficiary status to sue Yantis to declare the North Tributary Contract void. Carowest did not assert independent claims or seek independent relief against Yantis but sought the same declaratory relief against Yantis that it did against the City concerning the validity or legality of the North Tributary Contract based primarily on the rule 11 agreement between the City and Yantis. According to Carowest, the rule 11 agreement was illegal and improper, thereby making the North Tributary Contract void.
Given our conclusion that the trial court lacked subject matter jurisdiction over Carowest's UDJA claims against the City, we depart from the jurisdictional arguments raised by the parties and address the trial court's jurisdiction over Carowest's claims against Yantis in light of this conclusion. See Utility Assocs. , 517 S.W.3d at 307 (departing from precise jurisdictional challenges and argument presented "because jurisdictional requirements may not be waived and 'can be-and if in doubt, must be-raised by a court on its own at any time,' including on appeal" (quoting Norwood , 418 S.W.3d at 580 )).
Section 37.006 of the UDJA expressly requires that "all persons who have or claim any interest that would be affected by the declaration [to] be made parties" and "[a] declaration does not prejudice the rights of a person not a party to the proceeding." See Tex. Civ. Prac. & Rem. Code § 37.006. Rule 39 of the Texas Rules of Civil Procedure similarly addresses the joinder of persons needed for just adjudication, stating:
(a) Persons to Be Joined If Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded *176 among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest....
(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.
Tex. R. Civ. P. 39. This rule "provides a pragmatic rather than mechanical approach to dealing with defects in parties." State Office of Risk Mgmt. v. Herrera , 288 S.W.3d 543, 549 (Tex. App.-Amarillo 2009, no pet.) (citing Cox v. Johnson , 638 S.W.2d 867, 868 (Tex. 1982) (per curiam)). "Applying the rule [under subsection (b) ], a trial court determines whether in equity and good conscience the action may proceed or should be dismissed as the absent party is indispensable." Id.
In an analogous procedural context to the one here, the court in Herrera concluded that the trial court did not err in dismissing the remainder of a case after a city, who was a party, was dismissed from the suit based on the trial court's ruling that it was not timely sued. Id. Applying rule 39(b) of the Texas Rules of Civil Procedure, the court explained that, while under modern rules that it is a rare case that requires dismissal in the absence of a party, the underlying case presented such a situation and concluded that the city was an indispensable party in whose absence the suit could not proceed. See ids="9955053" index="89" url="https://cite.case.law/sw2d/638/867/#p868">id. Similarly, in this case, because the City is a party to the North Tributary Contact, it was an indispensable party to Carowest's claims seeking declarations as to the validity and legality of the contract. See Texas River Barges v. City of San Antonio , 21 S.W.3d 347, 357 (Tex. App.-San Antonio 2000, pet. denied) (stating that party to contract "is an indispensable party to any litigation that seeks to declare the contract void"); see also McCharen v. Bailey , 87 S.W.2d 284, 285 (Tex. Civ. App.-Eastland 1935, no writ) ("Where the injunction in effect sets aside a contract all parties to the contract are necessary parties."). It follows then that the trial court lacked jurisdiction to enter declaratory judgment solely against Yantis as to the validity or legality of the North Tributary Contract because the City "was an indispensable party in whose absence suit could not proceed." See Herrera , 288 S.W.3d at 549 ; see, e.g. , Tex. R. Civ. P. 39(b) ; Travis Heights Improvement Ass'n v. Small , 662 S.W.2d 406, 413 (Tex. App.-Austin 1983, no writ) (concluding that, after city was non-suited, trial court lacked jurisdiction to adjudicate action to declare zoning ordinance invalid *177 and observing that, although "such a situation is rare, there are parties whose presence is indispensable to the resolution of a cause of action that their absence can deprive a court of jurisdiction to determine such").
Although section 37.006 of the UDJA expressly provides that a declaration does not prejudice the rights of a person not a party to the proceeding, it is undeniable that a declaration that the North Tributary Contract is void would prejudice the City. See Tex. R. Civ. P. 39(b) (including, among factors to be considered, "extent a judgment rendered in the person's absence might be prejudicial to him or those already parties"). Because Yantis would be bound by the declaration, the City would be deprived of the benefit of its bargain. See, e.g. , Sage Street Assocs. v. Federal Ins. Co. , 43 S.W.3d 100, 104 (Tex. App.-Houston [1st Dist.] 2001, pet denied) (observing that it was "undeniable" that parties to contract who were not parties to suit would be prejudiced by judgment that contract was void, concluding that parties to contract were indispensable and that it was error not to join them when seeking to void contract, and observing that "appellees have not presented this Court with any case that upholds a trial court's judgment that a contract was void in the absence of both parties to the contract"); Texas River Barges , 21 S.W.3d at 357.
We also observe that "[a] declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." Brooks v. Northglen Ass'n , 141 S.W.3d 158, 163-64 (Tex. 2004). Without the City as a party, the trial court's declarations that the City violated TOMA and chapter 252 are advisory. See ids="9216119" index="97" url="https://cite.case.law/sw3d/141/158/#p163">id. ; see also Shearer v. Reister , No. 05-12-01475-CV, 2014 WL 1690479 at *4-5, 2014 Tex. App. LEXIS 4578 at *14-15 (Tex. App.-Dallas Apr. 28, 2014, no pet.) (mem. op.) (observing that requirement of joining indispensable parties " 'is essential to effectuate the well-settled principle that courts are without jurisdiction to render advisory opinions' " (quoting Lone Starr Multi Theatres, Inc. v. State , 922 S.W.2d 295, 297 (Tex. App.-Austin 1996, no writ) )).
Further, Carowest does not have "taxpayer standing" to bring claims against Yantis, a private party. See Bland Indep. Sch. Dist. , 34 S.W.3d at 555-56 (describing general rule that, "[u]nless standing is conferred by statute, taxpayers must show as a rule that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right," and exception to general rule that "taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury"). And the trial court did not have subject matter jurisdiction to declare that Yantis had violated section 36.02 of the Texas Penal Code, one of the two declarations that were directed at Yantis's conduct-as opposed to the City's conduct-to support the trial court's ultimate declaration that the North Tributary Contract was void. See Tex. Penal Code § 36.02 (listing elements of offense of bribery); State v. Morales , 869 S.W.2d 941, 947 (Tex. 1994) ("A civil court simply has no jurisdiction to render naked declarations of 'rights, status or other legal relationships arising under a penal statute.' "); LeBlanc v. Lange , 365 S.W.3d 70, 87 (Tex. App.-Houston [1st Dist.] 2011, no pet.) ("Penal Code violations do not give rise to private causes of action."). As to the trial court's other declaration directed at Yantis's conduct, that it had committed fraud against the City in its bid documents, Carowest *178 does not have standing to assert such a claim against Yantis. Vial v. Gas Sols., Ltd. , 187 S.W.3d 220, 227 (Tex. App.-Texarkana 2006, no pet.) ("A fraud claim is personal to the defrauded party." (citing Nobles v. Marcus , 533 S.W.2d 923, 927 (Tex. 1976) )).
In sum, because we have concluded that the trial court did not have subject matter jurisdiction over Carowest's UDJA claims against the City, we conclude that the trial court did not have jurisdiction to proceed solely against Yantis concerning the validity or legality of the North Tributary Contract.[7]
Remand on the Issue of Attorney's Fees
"Under section 37.009, a trial court may exercise its discretion to award attorneys' fees to the prevailing party, the nonprevailing party, or neither." Feldman v. KPMG LLP , 438 S.W.3d 678, 685 (Tex. App.-Houston [1st Dist.] 2014, no pet.) ; see Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). Because the prevailing parties have changed on appeal, we remand the issue of attorney's fees and costs to the trial court for reconsideration. See Barshop v. Medina Cty. Underground Water Conservation Dist. , 925 S.W.2d 618, 637-38 (Tex. 1996) ; Feldman , 438 S.W.3d at 685-86 (concluding that trial court had power to award attorney's fees under UDJA even though it had dismissed claim for declaratory relief for lack of jurisdiction); see also Zurita v. SVH-1 Partners, Ltd. , No. 03-10-00650-CV, 2011 WL 6118573 at *8-9, 2011 Tex. App. LEXIS 9670 at *26 (Tex. App.-Austin Dec. 8, 2011, pet. denied) (mem. op.) (upholding fee award under UDJA even though court had determined that it lacked subject matter jurisdiction over UDJA claims).
CONCLUSION
For these reasons, we vacate the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

In three other issues, the City argues that: (i) the judgment must be reversed and rendered because no valid legal or evidentiary basis exists to support the trial court's declarations or the voiding of the North Tributary Contract; (ii) the judgment must be reversed and remanded for a new trial because the trial court erroneously allowed Carowest's expert witness to opine on questions of law and render opinions that the City's actions violated the law; and (iii) the trial court erred in awarding attorney's fees, paralegal fees, and litigation expenses against the City.

See, e.g. , Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 439 (Tex. 2016) (holding that "the common-law distinction between governmental and proprietary acts-known as the proprietary-governmental dichotomy-applies in the contract-claims context just as it does in the tort claims context"); Tooke v. City of Mexia , 197 S.W.3d 325, 343 (Tex. 2006) ("A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions." (citations omitted)).

In its pleadings, Carowest also cites chapter 271 of the Texas Local Government Code as a jurisdictional basis for the trial court's jurisdiction over its claims against the City. Section 271.152 waives immunity for certain types of claims not applicable here. See Tex. Loc. Gov't Code § 271.152 (waiving sovereign immunity for purpose of "adjudicating a claim for breach of the contract" that is subject to subchapter). The trial court declared that the City violated section 271.0065, which is in subchapter A of chapter 271, the Public Property Finance Act, and addresses additional competitive bidding procedures. See id. § 271.0065. Subchapter A of chapter 271, however, does not contain an express waiver of immunity. Thus, we conclude that chapter 271 does not provide a jurisdictional basis for Carowest's UDJA claims.

The Texas Supreme Court explained the importance of this determination as follows:
The effect of the Act's limitations on recovery is important, though not in this case, in responding to a governmental entity's plea to the jurisdiction, the ruling on which is subject to interlocutory appeal. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). If the limitations do not determine the scope of the waiver of immunity, an assertion of a claim on a contract covered by the Act would be enough to defeat the jurisdictional plea. Otherwise, a plaintiff would also be required to show that the damages claimed are permitted by the Act.
Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty. , 449 S.W.3d 98, 106 n.17 (Tex. 2014).

For the same reason, we find misplaced Carowest's reliance on cases that predate Patel and Zachry Construction . See, e.g. , Hendee v. Dewhurst , 228 S.W.3d 354, 379 n.31 (Tex. App.-Austin 2007, pet. denied) ; Labrado v. County of El Paso , 132 S.W.3d 581, 588 (Tex. App.-El Paso 2004, no pet.) ; Securtec, Inc. v. County of Gregg , 106 S.W.3d 803, 814-16 (Tex. App.-Texarkana 2003, pet. denied).

In multiple other issues, Yantis challenges the sufficiency of the evidence, the admission of expert testimony, and the award of attorney's fees and litigation expenses against it. Because it is dispositive, we limit our analysis to the trial court's jurisdiction. See Tex. R. App. P. 47.1.

As previously stated, the Texas Supreme Court has directed us to look to the underlying nature of UDJA claims. See Texas Dep't of Parks & Wildlife v. Sawyer Trust , 354 S.W.3d 384, 388 (Tex. 2011). As pointed out by Yantis in its post-submission letter, the trial court's declaration against Yantis that the North Tributary Contract was void, in substance, would have the effect of being an end run around the City's governmental immunity. If that approach were permitted, a governmental entity's immunity would disappear whenever a citizen is able to prevail against a private party whose municipal contract the citizen seeks to void without the necessity of including the governmental entity as a party.