# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-17-00696-CV

---

**City of New Braunfels, Texas; and YC Partners Ltd., d/b/a Yantis Company, Appellants**

**v.**

**Carowest Land, Ltd., Appellee**

---

**FROM THE 22ND DISTRICT COURT OF COMAL COUNTY**
**NO. C2017-0474A**
**THE HONORABLE MARGARET G. MIRABAL, JUDGE PRESIDING**

---

## O P I N I O N

The City of New Braunfels and YC Partners, Ltd., d/b/a Yantis Company appeal district court orders denying each of their pleas to the jurisdiction asserted in a suit brought against them by local property owner Carowest Land, Ltd. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (permitting interlocutory appeal of an order granting or denying a plea to the jurisdiction). We will reverse the district court's order denying the City's plea to the jurisdiction and will dismiss Yantis's appeal.

This is the third appeal this Court has been called on to resolve in an ongoing dispute among the City, Yantis, and Carowest. As a result, much of the background of this controversy has been discussed in two earlier opinions, *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501 (Tex. App.—Austin 2014, no pet.) (*Carowest I*), and *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163 (Tex. App.—Austin 2017, pet. filed)

(*Carowest II*).  *See also Carowest Land, Ltd. v. Y.C. Partners*, Ltd., No. 03-11-00715-CV, 2012 Tex. App. LEXIS 3598 (Tex. App.—Austin, May 1, 2012, no pet.) (mem. op.) (granting appellant Carowest's unopposed motion to dismiss appeal); *City of New Braunfels v. Carowest Land, Ltd.*, No. 03-11-00211-CV, 2011 Tex. App. LEXIS 5039 (Tex. App.—Austin, July 1, 2011, no pet.) (mem. op.) (granting appellant City's unopposed motion to dismiss appeal).  In this latest appeal, the issue is whether the district court has subject-matter jurisdiction to adjudicate the merits of a claim by Carowest seeking a declaratory judgment and attorney's fees as allowed by the Uniform Declaratory Judgments Act (UDJA).  *See* Tex. Civ. Prac. & Rem. Code §§ 37.004, .009.  Accordingly, we take as true the facts alleged by Carowest in its live pleadings or for which it has presented evidence except to the extent the City has presented evidence sufficient to negate those facts. *See, e.g.*, *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

**Carowest's dispute with the City and Yantis**

Carowest owns a 240-acre property in New Braunfels, a portion of which Carowest voluntarily conveyed to the City to allow for construction of a drainage channel.  The City hired Yantis to construct the drainage channel.  This project came to be called the South Tributary Project, and it did not go smoothly.  *See Carowest I*, 432 S.W.3d 507-12 (detailing the facts of the underlying dispute).  Eventually, in July of 2009, the City and Carowest entered into a Letter Agreement in an attempt to "resolve issues related to the South Tributary Project."  The Letter Agreement allowed Carowest to modify the location and design of the channel (the Modification) in exchange for Carowest paying for certain costs related to the Modification. Under the Letter Agreement, Carowest would receive all fill from the South Tributary Project.

2

The parties also agreed to work in good faith to complete the South Tributary Project, they agreed Carowest would convey land to the City for certain other projects, and they agreed that Carowest would receive 13,944 cubic yards of fill from another project—the North Tributary Project—to compensate for the fill the City took from the South Tributary Project that was supposed to have been given to Carowest. The City also hired Yantis as the contractor on the North Tributary Project. The Letter Agreement also contained an indemnity clause under which Carowest agreed:

> to indemnify the City and hold the City harmless for any claims brought by The Yantis Company for any Modification Costs incurred by Yantis, such as delay costs, claimed by Yantis and directly attributable to the Modification (the "Yantis Claims"). Any invoices related to these Yantis Claims submitted to the City shall be promptly provided to Carowest. If either party disputes any claim, the claim shall be submitted to Halff and Pape-Dawson . . . .

Among the many continuing points of contention between the parties, Yantis ended up submitting to the City a delay claim for $556,248 for work Yantis attributed to the Modification on the South Tributary Project. Pursuant to the Letter Agreement's indemnity provision, the City submitted the claim to Carowest, and on May 13, 2010, the City directed Carowest "to negotiate with Yantis and work out a payment, if any, for delay damages and obtain a release for the benefit of the City." However, in October 2009, unbeknownst to Carowest, the City and Yantis had executed a change order containing language that Carowest says had already released all of Yantis's claims against the City for the Carowest portion of the South Tributary Project. In addition, on May 31, 2010, Yantis applied to the City for a progress payment for Yantis's work on the South Tributary Project. As a condition of receiving that payment, Yantis executed a "Partial Waiver and Release of Lien," which stated, "Yantis hereby acknowledges complete

3

satisfaction of, and waives and releases, any and all claims of every kind against [the City], the [South Tributary] Project and the property." Despite these releases, Yantis resubmitted its delay claim to the City in July 2010, this time seeking $276,270.80 in damages related to the Carowest portion of the South Tributary Project. In October 2010, the City sent a letter to Yantis containing the City's "written response to Yantis' delay claim against the City." The letter stated that "based on the execution of [the October 2009 change order], Yantis has waived 'any and all costs associated with or resulting from the change(s) ordered herein, including all impact, **delays**, and acceleration costs'." (Emphasis and punctuation in original.) Because Yantis did not abandon its delay claim and the City did not rescind its request that Carowest handle Yantis's delay claim, Carowest sued Yantis and the City in November 2010. During the course of the ongoing lawsuit, Carowest asserted multiple causes of action, including three sets of declaratory claims. The City asserted counterclaims, including a breach-of-contract claim seeking monetary damages for alleged breach of the Letter Agreement by Carowest. The City filed a plea to the jurisdiction, asserting that Carowest's claims were barred by sovereign immunity. The trial court denied that plea and the City appealed. This Court resolved that interlocutory appeal in 2014 in *Carowest I*, which is further discussed below. In 2015, the parties agreed to sever two of Carowest's three sets of declaratory judgment claims, which related to the North Tributary Project, into a separate suit. The suit on the North Tributary Project declaratory claims eventually formed the basis for *Carowest II*. The remaining set of declaratory judgment claims related to the validity of Yantis's delay claim and the parties' corresponding obligations under the Letter Agreement pertaining to the South Tributary Project. The district court granted summary judgment in favor of Carowest on the declaratory claims related to the South Tributary Project in 2016, specifically ordering that:

4

a. The October 21, 2009 Change Order fully and finally released and waived the Yantis Delay Claim.

b. The May 31, 2010 Waiver fully and finally released and waived the Yantis Delay Claim.

c. Under the July 27, 2009 Letter Agreement, the City has no right to indemnification from Carowest for the Yantis Delay Claim.

Carowest sought the first two of these declarations solely against Yantis and the third solely against the City. The district court expressly declined to dispose of any other claims by Carowest, including the claim for attorney's fees under section 37.009 of the Civil Practice and Remedies Code. In January 2017, Carowest filed an opposed motion to sever the South Tributary Project declaratory claims into a separate cause. Carowest argued that severance was appropriate because the South Tributary Project declaratory claims "are not interwoven with the other counts because they were purely legal issues decided by summary judgment on an undisputed record." Carowest further urged that severance would "allow the summary judgment, once the issue of fees is resolved, to become final while the remaining claims proceed."[1] The district court granted Carowest's motion in March 2017. Three months after the claims were severed, this Court issued its opinion in *Carowest II*, holding that sovereign immunity barred the North Tributary Project declaratory claims. Believing that *Carowest II*'s reasoning should also apply to the more recently severed South Tributary Project declaratory claims, the City and

---

[1] The City opposed the motion to sever on the ground that Carowest's South Tributary Project declaratory claims were interwoven with and implicate the same provision of the Letter Agreement as the City's affirmative counterclaim for relief under the Letter Agreement. *See Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 880-81 (Tex. App.—Austin 2002, no pet.) (holding the trial court abused its discretion in severing claims for declaratory relief from interwoven counterclaims that involved the same facts and issues).

Yantis each filed a plea to the jurisdiction in the new lawsuit. In two separate orders, the district court denied the pleas, and the City and Yantis appealed.

The parties all argue that the present interlocutory appeal should be guided by a controlling prior opinion of this Court: the City and Yantis argue that *Carowest II*'s disposition of the North Tributary Project declaratory claims requires us to reverse in this case as well, while Carowest observes that *Carowest II* did not address the South Tributary Project declaratory claims and their distinct jurisdictional bases and argues that "this Court has already decided the issues presented in this appeal in *Carowest I* and should therefore affirm in this case as well." In addition, Carowest has filed a motion to dismiss Yantis's appeal, arguing that section 51.014(a)(8) of the Civil Practice and Remedies Code does not authorize interlocutory appeal of an order denying a plea to the jurisdiction of a non-governmental unit. We will first address the City's governmental immunity, and because the parties' arguments on this issue center on this Court's prior opinions, we begin with a summary of those opinions as they relate to the present issues on appeal.

**This Court's prior opinions**

So far, Carowest has sought determination of three sets of questions under the UDJA: (1) whether the City violated the Texas Open Meetings Act (TOMA) in meetings relating to the North Tributary Project, (2) whether the City's contract awarding Yantis the North Tributary Project was void under Local Government Code chapter 252, and (3) whether Yantis's delay claims related to the South Tributary Project are valid. This Court directly addressed these UDJA claims in its prior opinions. The parties have brought the third set of questions (those related to the South Tributary Project) before us in this appeal because of our differing

resolutions of whether the district court had jurisdiction over the North Tributary Project declaratory claims in *Carowest I* and *II*.

**Carowest I**

In *Carowest I*, this Court was asked to determine whether the district court had jurisdiction over a host of claims by Carowest, including the three sets of UDJA claims. This Court concluded that the district court had subject-matter jurisdiction over all the UDJA claims. *Carowest I*, 432 S.W.3d at 535. This Court reasoned that Carowest's UDJA claims under the Texas Open Meetings Act fell within TOMA's express waiver of immunity allowing an interested person to bring an action by mandamus or injunction to reverse a violation or threatened violation of TOMA. *See* Tex. Gov't Code §§ 551.141 (an action taken by a governmental body in violation of TOMA is voidable), .142 (an interested person may bring an action by mandamus or injunction). This Court stated, "[t]he fact that Carowest has sought the remedy of declaratory rather than equitable relief does not change the jurisdictional analysis here." *Carowest I*, 432 S.W.3d at 531 (citing *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.) (observing that a cause of action and waiver of immunity in the Public Information Act parallel to that in TOMA could provide "a jurisdictional basis" for UDJA claims challenging withholding of information in alleged violation of the PIA)); *Hendee v. Dewhurst*, 228 S.W.3d 354, 379 n.31 (Tex. App.—Austin 2007, pet. denied) (noting that if plaintiffs had standing under a taxpayer exception to prevent expenditures by injunction, then the UDJA would also allow a claim for declaratory relief); *cf. Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 301 (Tex. 2011) (illustrating limitations on use of the UDJA to recover attorney's fees).

Similarly, this Court determined that Carowest's claims under Local Government Code chapter 252 fell within that statute's express waiver of immunity, which provides: "[i]f the contract is made without compliance with this chapter, it is void and the performance of the contract, including the payment of any money under the contract, may be enjoined by . . . any property tax paying resident of the municipality." Tex. Loc. Gov't Code § 252.061. The City challenged Carowest's right to bring the claim based on an assertion that Carowest was not a "resident," but this Court determined that, assuming there is a material distinction between a property-owning taxpayer (which Carowest is) and a resident, the district court would not have erred in finding that Carowest is a resident. *Carowest I*, 432 S.W.3d at 533-34. Therefore, Carowest had standing to bring a claim under chapter 252 and could also pursue a declaratory claim regarding the North Tributary Project contract.

Finally, this Court concluded that the claims for declaratory relief related to Yantis's delay claim were properly before the district court "by virtue of the waiver of immunity in Local Government Code chapter 271, subsection I and the limited jurisdiction that arises by virtue of the City's claim for monetary relief." *Id.* at 534. This Court further determined that the declaratory claims concerning the Yantis delay claim were not moot and would remain a justiciable controversy "as long as Carowest is prosecuting a viable declaratory claim seeking to invalidate the 'North Tributary Deal' in which the delay claim purportedly was settled." *Id.* at 535. The record included a Rule 11 agreement from May 9, 2011, signed by counsel for the City and Yantis, in which Yantis agreed to release the City from Yantis's delay claim if "Yantis is awarded the North Tributary Contract . . . at the New Braunfels City Council meeting scheduled for this evening." The offer to release the claim would have been withdrawn by its own terms if Yantis had not been awarded the contract. Carowest had separately asserted that this was an

8

impermissible quid-pro-quo arrangement negotiated in an improperly convened executive session such that the North Tributary Contract entered into as a result of this negotiation and the accompanying agreement to settle the delay claim were invalid or void. This Court continued, "even if the release is assumed to resolve the delay claim prospectively from the date of its execution, the validity of the delay claim would still remain a live and justiciable issue to the extent it bears upon the parties' past compliance with the Letter Agreement's indemnification provisions." *Id*.

Thus this Court concluded the district court did not err in overruling the City's plea to the jurisdiction as to Carowest's UDJA claims.

***Carowest II***

The merits of Carowest's severed UDJA claims relating to the North Tributary Project under TOMA and Local Government Code chapter 252 proceeded to a jury trial on the merits and a bench trial on attorney's fees, costs, and expenses. *Carowest II*, 549 S.W.3d at 168. The district court entered declaratory judgment in favor of Carowest and awarded attorney's fees, costs, and expenses against the City and Yantis jointly and severally. *Id.* at 169. On appeal, this Court concluded that two intervening Texas Supreme Court opinions, one addressing sovereign immunity and one addressing the redundant remedies doctrine, required a different outcome than that reached in *Carowest I. Id.* at 172-74; *see Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 79 (Tex. 2015) (redundant remedies doctrine); *Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 109-10 (Tex. 2014) (sovereign immunity). This Court reasoned that in *Zachry Construction*, the Texas Supreme Court directed that the scope of an express waiver of immunity is limited to the express relief provided in the statute.

9

*Carowest II*, 549 S.W.3d at 173. Therefore, this Court concluded that section 551.142 of TOMA waives immunity from suit for only injunctive and mandamus relief and section 252.061 of the Texas Local Government Code waives immunity from suit for only injunctive relief, but neither statute waives immunity for declaratory relief. *Id.* (citing *Zachry Constr.*, 449 S.W.3d at 109-10; *Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29 (Tex. 2006)). In addition, this Court determined that the redundant remedies doctrine provided a second reason to deny Carowest declaratory relief against the City. *Id.* at 173-74. This Court vacated the trial court's judgment and remanded the case to the trial court.

**Jurisdiction over declarations related to the Yantis delay claim**

Although the question of the City's immunity is once again before us, this appeal differs from *Carowest I* in that the underlying suit seeks solely declaratory relief and differs from *Carowest II* in that it is an interlocutory appeal with alleged waivers of immunity that were not at issue in *Carowest II*. We review de novo whether the district court lacked jurisdiction due to the City's assertion of immunity. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006) ("Whether a trial court has jurisdiction is a question of law subject to de novo review."). "Governmental immunity protects a political subdivision performing governmental functions as the state's agent." *Rosenberg Dev. Corp. v. Imperial Performing Arts, Inc.*, No. 17-0660, 2019 Tex. LEXIS 242, at *2 (Tex. Mar. 8, 2019). In addition, "sovereign immunity bars UDJA actions against the state and its political subdivisions absent a legislative waiver." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620 (Tex. 2011) (per curiam).

10

Carowest argues the district court has jurisdiction over the South Tributary Project UDJA claims for two reasons: (1) the City asserted counterclaims for affirmative relief against Carowest in the parent cause, and (2) chapter 271 of the Local Government Code waives immunity for declaratory judgment claims arising from contracts subject to that chapter. Carowest asserts that *Carowest I*'s acknowledgment of the "waiver of immunity in Local Government Code chapter 271, subsection I and the limited jurisdiction that arises by virtue of the City's claim for monetary relief" continues to apply to the present appeal. *Carowest I*, 432 S.W.3d at 534. However, unlike the circumstances in *Carowest I*, this appeal concerns a bare claim for declaratory relief. In the suit initiated by Carowest in 2010, the City had asserted claims for monetary relief based on breach of a contract that this Court determined invoked the limited jurisdiction that exists "if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006); *Carowest I*, 432 S.W.3d at 526-27. However, in the severed cause on appeal, the City has not asserted any claim for relief. In the absence of any affirmative claim for relief by the City, the limited jurisdiction that might have arisen from the City's claims for affirmative relief is not available. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011) (plaintiff cannot recover if the government is not pursuing a claim for damages to which an offset would apply). The City's counterclaims in the cause of action filed in 2010 do not waive governmental immunity in the cause that was severed in 2017 on Carowest's motion.[2]

---

[2] In asserting affirmative claims for monetary relief against Carowest, the City would not have immunity from Carowest's claims "germane to, connected to, and properly defensive to claims asserted by the City" to the extent any recovery on those claims would offset any recovery by the City. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 378 (Tex. 2006).

11

Nor does Local Government Code chapter 271 waive immunity for Carowest's claim that the City is not entitled to indemnification from Carowest for the Yantis delay claim under the UDJA. Under chapter 271, a "local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." Tex. Loc. Gov't Code § 271.152. In this severed case, there is no pending claim for breach of a contract. Chapter 271's waiver of immunity from suit to allow adjudication of a claim for breach of contract does not waive immunity from suit for a declaration of rights under a contract when there is no pleaded breach-of-contract action. *Lower Colo. River Auth. v. City of Boerne*, 422 S.W.3d 60 (Tex. App.—San Antonio 2014, pet. dism'd) ("Based on the plain language of section 271.152, the legislature has not expressly and unambiguously waived immunity from suit for a declaratory judgment claim."); *McCandless v. Pasadena Indep. Sch. Dist.*, No. 03-09-00249-CV, 2010 Tex. App. LEXIS 2383, at *9 (Tex. App.—Austin Apr. 2, 2010, no pet.) (mem. op.) ("Without a properly pleaded breach-of-contract action, section 271.152 does not waive governmental immunity."). As a result, the district court lacked subject matter jurisdiction to issue a declaratory judgment that "the City has no right to indemnification from Carowest for the Yantis Delay Claim" under the Letter Agreement.

---

To prevail on its motion to sever, Carowest argued that its South Tributary Project declaratory claims were independent claims that could have been asserted in a separate lawsuit and that the claims "are not interwoven with the other counts because they were purely legal issues decided by summary judgment on an undisputed record."

**Yantis's interlocutory appeal**

Having determined that governmental immunity shields the City from Carowest's declaratory claim against it, we next consider whether Yantis may appeal from the district court's interlocutory order denying Yantis's plea to the jurisdiction. "A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that: . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). Yantis agrees it is a private contractor, but argues that it is a governmental unit because it is an "organ of government" under section 101.001 for purposes of this lawsuit. *See id.* §101.001(3)(D). To qualify as a governmental unit under section 101.001, Yantis must be an "organ of government," and it also must derive its "status and authority . . . from the Constitution of Texas or from laws passed by the legislature under the constitution." *See University of the Incarnate Word v. Redus*, 518 S.W.3d 905, 909 (Tex. 2017) (addressing the requirements for being a "governmental unit" under Tex. Civ. Prac. & Rem. Code § 101.001(3)(D)). The Texas Supreme Court has recognized that a private institution can be a governmental unit for the purpose of an interlocutory appeal. *Id.* at 907-08 (holding that University of the Incarnate Word could pursue an interlocutory appeal relating to its police department and discussing *LTTS Charter School, Inc. v. C2 Construction, Inc.*, 342 S.W.3d 73, 77 (Tex. 2011)). The Court has explained that "an 'organ of government' is an entity that operates as part of a larger governmental system." *Id.* at 910. The Court expressly cautioned that consideration of whether an entity shares immunity is distinct from whether the entity meets section 101.001's definition of governmental unit: "whether an entity is entitled to an interlocutory appeal and whether an entity has sovereign immunity are separate questions with separate analytical frameworks." *Id.* at 911.

13

Yantis argues that it should be considered an "organ of government" essentially because Yantis's actions relevant to this lawsuit have been on the City's behalf, Yantis is being sued for merely following the City's directives, and Yantis's position is aligned with the City. However, the delay claim at issue in this appeal is a claim that Yantis had, if at all, *against* the City. In submitting the delay claim to the City and maintaining the claim even after the City opined that the claim had been released, it does not appear that Yantis was carrying out the City's directives with no independent discretion. In any event, Yantis's argument does not explain how, in providing construction services for the drainage channel and billing the City for those services, Yantis was acting as part of a larger governmental system. Nor are we persuaded that the existence of statutes authorizing the City to enter into contracts with private entities satisfies section 101.001's requirement that an entity's status and authority be "derived from the Constitution of Texas or from laws passed by the legislature under the constitution." *Cf. id.* at 909-10 (discussing laws that supported private university's status as a governmental unit as to its law enforcement function and comparing and contrasting those attributes to the charter schools at issue in *LTTS Charter School*, 342 S.W.3d at 78). Because Yantis has not shown that it is a governmental entity under section 101.001, Yantis may not pursue an interlocutory appeal.

**Conclusion**

We conclude that the City's immunity was not waived and that Yantis has not demonstrated that it is a governmental unit entitled to an interlocutory appeal of a ruling on a plea to the jurisdiction. Accordingly, we reverse the district court's order denying the City's plea to the jurisdiction, dismiss Yantis's appeal for lack of jurisdiction, and remand the case to the trial court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Smith

Reversed and Remanded in part; Dismissed in part

Filed:   May 16, 2019