# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00149-CV

**Triple BB, LLC, Appellant**

**v.**

**The Village of Briarcliff, Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-13-001749, HONORABLE JAN SOIFER, JUDGE PRESIDING

## O P I N I O N

We withdraw the memorandum opinion and judgment dated August 15, 2018, substitute the following opinion and judgment in their place, and deny Triple BB's motion for rehearing.[1]

Triple BB, LLC, appeals from an order of the district court granting the plea to the jurisdiction filed by the Village of Briarcliff, Texas (the Village). The underlying litigation concerns Triple BB's asserted right to keep a billboard on cliffside property owned by Malcolm Phillips in the Village. The Village asserted in its plea to the jurisdiction that Triple BB had failed to establish a

---

[1] Under the circumstances of this case, we deny the right to file a further motion for rehearing. *See* Tex. R. App. P. 49.4 (allowing appellate courts to deny right to file motion for rehearing in accelerated appeals).

waiver of the Village's governmental immunity from suit. In its live pleading, Triple BB asserted claims against the Village for a prescriptive easement, breach of contract, and inverse condemnation, and sought declaratory relief nullifying a contract with the Village concerning the billboard. For the reasons that follow, we will affirm the district court's order granting the Village's plea to the jurisdiction.

## BACKGROUND

The Village is a municipality located on the shores of Lake Travis. Over three decades ago, the Briarcliff Marina erected a billboard attached to a cliffside property lot in the Village:



The billboard is located on Lot 268A, directly below Lot 268, on Briarcliff Drive. The Village owned Lot 268A at the time of the placement and for several decades afterwards.

In 2002, the Village entered into a contract with James and Linda Clendenin, then owners of the Marina. Their agreement consisted of a Master Agreement, which laid out the basic terms of the contract; an Easement Agreement; and two license agreements (collectively, the Contract). Under the Contract, the Marina granted the Village an easement across the Marina's land to install and maintain a raw water line along the route of a preexisting line. The Marina also agreed to modify the location of a separate easement granting the Marina access to a roadway. In return, the Village granted "to the Marina, its successors and assigns" a license to display the billboard on Lot 268A and agreed to repair the Marina's parking lot at the Village's expense.[2]

Three years later, the Clendenins sold the Marina and all their interest in the Contract to Triple BB.[3] The Village subsequently conveyed Lot 268A to Richard and Shirley Flowers, the owners of Lot 268. The deed from the Village to the Flowerses is silent as to the billboard or the license granted in the Contract. In 2011, the Flowerses sold Lots 268 and 268A to Phillips who, in turn, demanded that Triple BB remove the billboard.

Triple BB filed suit against Phillips seeking a declaration of its rights under the Contract, a permanent injunction to keep the billboard in place, and an award of attorney's fees. Phillips filed a motion for summary judgment arguing that the license agreement covering the billboard (the License Agreement) was unenforceable against him. Before the district court ruled on Phillips's motion, Triple BB added the Village as a defendant and asserted the same claims. The

---

[2] The Village granted a second license for a sign at a different location.

[3] The Clendenins assigned their interest to Triple BB Marina, Ltd. The record reflects that Triple BB, LLC, is the general partner of Triple BB Marina, Ltd. The parties do not dispute that Triple BB, LLC, is the successor-in-interest to the Clendenins.

district court subsequently granted Phillips's motion for summary judgment, in effect deciding that Phillips did not have to allow Triple BB to display the billboard. The Village then filed a plea to the jurisdiction asserting that Triple BB had failed to establish a waiver of its governmental immunity.

Triple BB responded by amending its pleadings to assert that it acquired a prescriptive easement to display the billboard that is binding on Phillips. In addition, Triple BB asserted that the Village breached the Contract by failing to convey Lot 268A subject to Triple BB's license and that the Village therefore took Triple BB's property—the land subject to the raw water line easement—without compensation in violation of the Texas Constitution. Triple BB also sought declaratory relief based on its alternate theory that the Contract was void for failure of consideration. The district court granted the Village's plea to the jurisdiction. This interlocutory appeal ensued. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (conferring jurisdiction over interlocutory appeal of order granting or denying plea to jurisdiction filed by governmental unit).

## STANDARD OF REVIEW

Governmental immunity has two components: immunity from suit and immunity from liability.[4] *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity from suit deprives a court of subject matter jurisdiction over claims against political subdivisions

---

[4] Sovereign immunity and governmental immunity are related common-law doctrines that protect the government from suit. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011). Even though governmental immunity applies here, we cite to several authorities involving sovereign immunity.

of the state, including cities, absent legislative waiver. *Id.* And if the legislature elects to waive immunity, it must do so by clear and unambiguous language. *Nazari v. State*, ___ S.W.3d ___, ___, No. 16-0549, 2018 WL 3077659, at *3 (Tex. June 22, 2018) (citing Tex. Gov't Code § 311.034)). Immunity from suit implicates a court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Harris Cty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).

Whether a court possesses subject matter jurisdiction is a question of law that we review de novo. *Id.* We begin our analysis by examining the plaintiff's live pleadings to determine if it alleges facts that affirmatively demonstrate subject matter jurisdiction. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). We construe the plaintiff's pleadings liberally, take all factual allegations as true, and look to the plaintiff's intent. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). We may also consider evidence relevant to jurisdiction and must do so when necessary to resolve the jurisdictional issue. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

**DISCUSSION**

Triple BB asserts in a single issue that the district court erred in granting the plea to the jurisdiction because governmental immunity does not protect the Village from its claims.

**Proprietary or Governmental Function**

Triple BB initially argues that governmental immunity does not apply at all because the Village contracted with the Marina in its proprietary capacity.

5

Governmental immunity shields municipalities such as the Village from suits arising from performance of their "governmental" but not "proprietary" functions. *City of Austin v. Utility Assocs.*, 517 S.W.3d 300, 307 (Tex. App.—Austin 2017, pet. denied); *see Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 439 (Tex. 2016) [*Wasson I*] (holding that distinction between governmental and proprietary acts "applies in the contract-claims context just as it does in the tort claims context"). Courts distinguish between governmental and proprietary functions because cities have no inherent immunity but derive their immunity from the state. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). As a result, "a city is cloaked in the state's immunity when it acts as a branch of the state, but only when it acts as a branch of the state."[5] *Wasson I*, 489 S.W.3d at 436.

The distinction between governmental and a proprietary functions "has not been a clear one," and determining whether a particular activity is governmental or proprietary "is not always a cut-and-dried task." *Id.* at 438 (citing *Tooke*, 197 S.W.3d at 343). Generally speaking, a city's governmental functions are those acts its performs "as the agent of the state in furtherance of general law for the interest of the public at large." *Id.* at 436 (quoting *City of Houston v. Shilling*, 240 S.W.2d 1010, 1011-12 (Tex. 1951)). Proprietary functions, in contrast, are those "performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality." *Id.* at 433-34 (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex. 1986)).

---

[5] Triple BB did not raise this argument until its reply brief, but we address it because it determines whether governmental immunity is applicable to this case at all. *See Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 451 (Tex. 2016) ("If we determine the action arose out of the municipality's performance of a proprietary function, then the case proceeds as if the claim were asserted against a private person.").

Courts were traditionally left to determine whether a function is governmental or proprietary, but the legislature now has constitutional authority to "define for all purposes those functions of a municipality that are to be considered governmental and those that are proprietary, including reclassifying a function's classification assigned under prior statute or common law." Tex. Const. art. XI, § 13(a). The legislature exercised that authority by enacting the Texas Tort Claims Act (TTCA) and reclassifying certain proprietary functions as governmental. *See* Tex. Civ. Prac. & Rem. Code § 101.0215; *see also City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997) (noting that TTCA reclassified maintenance of storm sewers as governmental even though it was considered propriety at common law). The TTCA applies to tort claims, but courts determining whether immunity applies in the contract-claims context "should be guided . . . by the TTCA's treatment of the proprietary-governmental distinction." *Wasson I*, 489 S.W.3d at 439.

Courts determine whether immunity applies in this context by examining "whether the municipality was engaged in a governmental or proprietary function when it entered the contract, not when it allegedly breached the contract." *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 149 (Tex. 2018) [*Wasson II*]. Triple BB argues that we should focus solely on the license agreement covering the billboard on Lot 268A because that is "[t]he central agreement at issue here." However, we cannot isolate the license agreement from the remainder of the Contract because the Master Agreement expressly incorporates all of the ancillary agreements, including the License Agreement. *See, e.g.*, *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) (orig. proceeding) (per curiam) ("Documents incorporated into a contract by reference become part of that contract.").

7

We thus look to the Contract as a whole to determine whether the Village acted in its governmental or proprietary capacity.

The TTCA designates "the operation and maintenance of a public utility" as a proprietary function. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1). Relying on this designation, Triple BB argues that the Village acted in its propriety capacity because the Contract recites that the Village desired "to make certain improvements to its water intake and treatment facilities." However, the TTCA provides that "the proprietary functions of a municipality do not include" any of the TTCA's enumerated governmental functions. *Id.* § 101.0215(c); *Wasson II*, 559 S.W.3d at 147. One of those enumerated governmental functions is providing "water and sewer service." Tex. Civ. Prac. & Rem. Code § 101.0215(a)(32). Triple BB responds that a contract for upgrading the capabilities of a water treatment plant is not one for providing water and sewer service but rather concerns the maintenance of a public utility. But the water treatment facility and the raw water lines that supply it are essential parts of the Village's provision of water and sewer service. Triple BB may not "split various aspects of [the Village's] operation into discrete functions and recharacterize certain of those functions as proprietary." *City of Plano v. Homoky*, 294 S.W.3d 809, 815 (Tex. App.—Dallas 2009, no pet.) (quoting *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied)). We therefore must conclude that the Village acted in its governmental capacity when it entered into the Contract to upgrade the capabilities of its water-treatment plant. *See PKG Contracting, Inc. v. City of Mesquite*, 197 S.W.3d 388, 388-89 (Tex. 2006) (per curiam) (noting that TTCA designates maintenance of "sanitary and storm sewers" as

8

governmental function and holding that city acted in its governmental capacity when it contracted to build storm drainage system).

**Breach of Contract**

Having concluded that governmental immunity applies, we now turn to whether Triple BB established a waiver. Triple BB asserts that Section 271.152 of the Local Government Code waives the Village's immunity from suit for its breach-of-contract claim.[6] In the alternative, Triple BB asserts that the Contract is a settlement agreement and that *Texas A & M University—Kingsville v. Lawson*, 87 S.W.3d 518 (Tex. 2002) (plurality op.), precludes the Village from claiming immunity from suit for breach.

*Section 271.152*

Section 271.152 of the Local Government Code provides a "limited waiver of immunity for local governmental entities that enter into certain contracts." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 412 (Tex. 2011). Specifically, a local governmental entity that "enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." Tex. Loc. Gov't Code § 271.152. The statute defines a "contract subject to this

---

[6] "A governmental entity that enters into a contract 'necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit.'" *Zachry Constr. Corp. v. Port of Houston Auth.*, 449 S.W.3d 98, 121 (Tex. 2014) (quoting *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)).

subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity." *Id.* § 271.151(2)(A).

Triple BB argues that the grant of an easement alone qualifies as a contract for service. Chapter 271 does not define the term "service," but the Texas Supreme Court has explained that it "is broad enough to encompass a wide array of activities." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010). In common usage, the term "includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Id.* (quoting *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex. 1962)). Chapter 271 does not extend to contracts in which the government receives an indirect or attenuated benefit. *Id.* For that reason, Chapter 271 does not apply unless the governmental entity has a right under the contract to receive a service. *Lubbock Cty. Water Control & Improvement Dist. v. Church & Akin*, *L.L.C.*, 442 S.W.3d 297, 303 (Tex. 2014).

Triple BB argues that the easement qualifies as a service because the Village has the contractual right to make use of Triple BB's land to the Village's benefit. "However, we cannot read the meaning of 'services' so broadly that the requirement is read completely out of the statute." *West Travis Cty. Pub. Util. Agency v. Travis Cty. Mun. Util. Dist. No. 12*, 537 S.W.3d 549, 555 (Tex. App.—Austin 2017, pet. denied). By conveying an easement, the Clendenins granted the Village a legal right to use their land in a certain way. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002). They made no promise to perform an act, and thus the contract for easement is not

a contract for service. On these facts, Chapter 271 does not apply to waive the Village's immunity.[7]
*See Water Expl. Co. v. Bexar Metro. Water Dist.*, 345 S.W.3d 492, 501-03 (Tex. App.—San Antonio 2011, no pet.) (concluding that Section 271.152 did not apply to real-property lease when lessee's agreement to perform certain acts was entirely contingent); *City of San Antonio v. Reed S. Lehman Grain, Ltd.*, No. 04-04-00930-CV, 2007 WL 752197, at *2 n.2 (Tex. App.—San Antonio Mar. 14, 2007, pet. denied) (mem. op.) (holding Section 271.152 inapplicable to easement contract because it "conveyed only an interest in real property to the City and is not an agreement for providing goods and services").

*Settlement Agreement*

Triple BB alternatively characterizes the Contract as an agreement to settle a claim against the Village. Triple BB relies heavily on *Lawson* in arguing that the Contract's purported status as a settlement agreement precludes the Village from asserting immunity.

In *Lawson*, a plurality of the Texas Supreme Court decided that when a governmental unit "agrees to settle a lawsuit from which it is not immune," it cannot "claim immunity from suit for breach of the settlement agreement." 87 S.W.3d at 518.[8] The Village responds that *Lawson* does

---

[7] Triple BB also asserted what it characterized as a separate claim for attorney's fees under Section 271.153 of the Local Government Code, and it argues on appeal that Section 271.153 provides a separate waiver of immunity. Section 271.153 addresses the damages available in a breach-of-contract action, including "reasonable and necessary attorney's fees that are equitable and just." Tex. Loc. Gov't Code § 271.153(a)(3). Section 271.152 incorporates Section 271.153's limitations on recovery, but Section 271.153 does not provide its own waiver of immunity. *See Zachry Constr. Corp.*, 449 S.W.3d at 109. The district court therefore did not err in granting the Village's plea to the jurisdiction on Triple BB's claim for attorney's fees.

[8] *Lawson* was a plurality opinion but "subsequent Texas Supreme Court holdings have followed it." *Hughes v. Tom Green Cty.*, 553 S.W.3d 1, 5 n.7 (Tex. App.—Austin 2017, pet. granted).

not apply because there is no indication that the Contract settled a claim against the Village. Triple BB points to the affidavit of Thomas Maione, Triple BB's owner, who averred that the Contract was "the result of the settlement of a dispute between the Clendenins, the Marina and the Village." However, Maione never specified the nature of the claim that was allegedly settled, and the Contract itself does not reflect the settlement of a claim against the Village. On these facts, *Lawson* does not prevent the Village from claiming immunity. *See City of San Saba v. Higginbotham*, No. 03-17-00408-CV, 2018 WL 2016463, at *2 (Tex. App.—Austin May 1, 2018, no pet.) (mem. op.) (reiterating that *Lawson* "only applies when the government is sued for breaching a settlement agreement when the government was not immune from the underlying claim"); *Texas Dep't of Health v. Neal*, No. 03-09-00574-CV, 2011 WL 1744966, at *4 (Tex. App.—Austin May 6, 2011, pet. denied) (mem. op.) (declining to extend *Lawson* to cases where government "settled a claim that, at that point in time, had no adjudicative value in our court system" (citation omitted))).

**Prescriptive Easement**

Triple BB next argues that its claim of a prescriptive easement over Lot 268A does not implicate the Village's immunity because it "does not involve state action." As a general rule, when the government "is made a party defendant to a suit for land," immunity bars the suit absent legislative consent. *See Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011) (quoting *State v. Lain*, 349 S.W.2d 579, 582 (Tex. 1961)). Even though Phillips now owns Lot 268A, Triple BB alleges that it obtained a prescriptive easement when the Village still owned the lot. "An easement 'is a nonpossessory interest [in land] that authorizes its holder to use the property for only particular purposes.'" *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018)

12

(quoting *Marcus Cable Assocs.*, 90 S.W.3d at 700). By granting an easement, a landowner "relinquish[es] a portion of the right to exclude" others from its land. *Marcus Cable Assocs.*, 90 S.W.3d at 700. Triple BB's claim that it gained the right to use the Village's land to display the billboard is, in substance, a "suit for land" that is barred by governmental immunity. *See City of Dallas v. Turley*, 316 S.W.3d 762, 773 (Tex. App.—Dallas 2010, pet. denied) (barring on governmental-immunity grounds UDJA action against City to establish that City had abandoned certain easements); *State v. Beeson*, 232 S.W.3d 265, 271-72 (Tex. App.—Eastland 2007, pet. dism'd) (barring on sovereign immunity grounds UDJA action against State to establish easement in real property).

**Declaratory Relief**

Triple BB's fourth argument is that the Uniform Declaratory Judgments Act (UDJA) itself waives immunity for its claim that the Contract is void. *See generally* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011.

The UDJA permits parties interested in a contract to have determined any question of validity arising under the contract. *Id.* § 37.004(a). However, except for a narrow waiver of immunity for claims challenging the validity of ordinances or statutes the UDJA generally does not enlarge a court's jurisdiction. *Ex parte Springsteen*, 506 S.W.3d 789, 799 (Tex. App.—Austin 2016, pet. denied). Rather, the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction." *Sawyer Tr.*, 354 S.W.3d at 388. As a consequence, sovereign immunity will bar an otherwise-proper UDJA claim if it would have the effect of establishing an entitlement to

13

relief against the government for which the legislature has not waived immunity. *Id.*; *Williams*, 216 S.W.3d at 828-29.

Triple BB seeks to nullify the Contract with the Village, but governmental entities "generally are immune from UDJA claims seeking to void contracts." *City of New Braunfels v. Carowest Land, Ltd.*, 549 S.W.3d 163, 171 (Tex. App.—Austin 2017, pet. filed); *see Utility Assocs.*, 517 S.W.3d at 312 (explaining rationale for governmental immunity in context of claims to nullify or establish validity of contract that governmental unit had already executed). We have already held that Triple BB has not established an independent waiver of immunity for its other claims based on the Contract. On these facts, Triple BB's claim that the Contract is void is barred by governmental immunity. *See Carowest Land*, 549 S.W.3d at 171; *Utility Assocs.*, 517 S.W.3d at 312.

**Takings Claim**

Triple BB's final assertion is that the district court erred because governmental immunity does not apply to its inverse condemnation claim. The Texas Constitution provides that no "property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." Tex. Const. art I, § 17(a). This provision applies to an inverse condemnation claim, "in which a property owner alleges that the government has usurped the use and value of his or her property, even if it has not completely appropriated title." *Kirby Lake*, 320 S.W.3d at 844. Governmental immunity does not shield the Village from a properly-pled takings claim. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). Conversely, if a plaintiff "cannot establish a viable takings claim," the government retains immunity, and the court

lacks jurisdiction over the dispute. *Texas Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013). The Village argues that the district court did not err because Triple BB failed to allege a viable claim.

To plead a viable inverse condemnation claim, "a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property" for public use. *Carlson*, 451 S.W.3d at 831. A taking "cannot be established by proof of mere negligent conduct by the government." *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016). In the context of an inverse condemnation claim, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). Triple BB's claim is predicated upon the Village's alleged oversight in failing to convey Lot 268A subject to Triple BB's license. Triple BB's factual allegations, taken as true, do not include an intentional act by the Village that resulted in the taking of Triple BB's property. *See Kerr*, 499 S.W.3d at 799; *Gragg*, 151 S.W.3d at 554. Because Triple BB failed to allege a viable takings claim, the Village retains immunity from suit. *See A.P.I. Pipe & Supply*, 397 S.W.3d at 166.

## CONCLUSION

Governmental immunity "shield[s] the public from the costs and consequences of improvident actions of their governments." *Tooke*, 197 S.W.3d at 332. "But with this benefit comes a significant cost: in 'shield[ing] the public from the costs and consequences of improvident actions of their governments,' sovereign immunity places the burden of shouldering those 'costs and consequences' on injured individuals." *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121

15

(Tex. 2015) (quoting *Tooke*, 197 S.W.3d at 332).  Even though we must conclude that the Village is immune from Triple BB's suit, we acknowledge the impact of our holding today.  We affirm the district court's order granting the Village's plea to the jurisdiction.


_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Field, and Bourland

Affirmed on Motion for Rehearing

Filed:   December 21, 2018