**AFFIRMED and Opinion Filed February 4, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00659-CV

**CITY OF MCKINNEY, TEXAS, Appellant**
**V.**
**KLA INTERNATIONAL SPORTS MANAGEMENT, LLC, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-02979-2020**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Reichek

In this breach of contract action, the City of McKinney appeals the trial court's denial of its plea to the jurisdiction on immunity grounds. In two issues, the City argues that the claims of KLA International Sports Management, LLC arise from the City's performance of a governmental function for which there is no waiver of immunity.

For reasons set out below, we conclude the City was engaged in a governmental function but has waived its immunity under chapter 271 of the Local Government Code. We therefore affirm the trial court's order.

# FACTUAL BACKGROUND

In September 2018, the City of McKinney sent a Request For Proposal (RFP) to KLA seeking a private sector partner to develop and improve new and/or existing youth soccer fields in the City. KLA, a private sports management company, submitted a bid that was accepted by the City. The City and KLA subsequently signed a non-exclusive revocable license agreement on December 18, 2018 giving KLA "recreational use" of three fields at the city-owned, 65-acre McKinney Soccer Complex at Craig Ranch. The agreement was amended two months later.

Pursuant to the amended agreement, KLA agreed to replace two existing artificial turf soccer fields (Fields 1 and 2) and rehabilitate a grass field (the Championship Field). The agreement required that Fields 1 and 2 would meet a "standard that reasonably equates to a FIFA-certified playing surface" and that KLA would construct all fields from "industry standard" components and utilize materials from a "FIFA-approved turf manufacturer." In addition, KLA was required to insure the fields, provide "year-round maintenance service" of the fields at a "stringent" level,[1] pay the water bill, and rebuild the fields every eight years. It also had to obtain a performance bond or letter of credit during the period of construction. The work, once commenced, was required to be completed within 180 days.

---

[1] The agreement set out the types of maintenance to be provided for both the grass and artificial fields.

In exchange for KLA's performance, the City granted KLA a license entitling it to use the improved fields for only soccer practice and soccer games in accordance with an agreed annual use calendar. The license provided that KLA would have priority use to accommodate its games and practices, but when KLA was not using the fields, the City could schedule use of the fields. The term of the license was thirty years but also contained specific events of default by KLA that, if not cured, could result in termination of the license.

In January 2020, the City issued a notice of default to KLA, alleging construction and timeliness deficiencies and other breaches. KLA responded, and the parties mediated the dispute as required by the agreement. When they were unable to resolve their issues, the City issued a notice of termination directing KLA to stop all work and vacate the fields.

KLA sued the City for breach of contract seeking specific performance, damages, attorney's fees, and injunctive relief in connection with the City's alleged wrongful termination and breach of the license agreement. KLA alleged that it provided line-item explanations and supporting evidence that "debunked" the City's complaints and was only days away from completing the work to make the fields ready for use when the City terminated the agreement. KLA alleged the City was not immune from suit because the City performed a proprietary function by entering the licensing agreement for use of the fields. Attached to the petition were the original and amended agreements and other evidence.

The City filed a combined answer and plea to the jurisdiction. In its plea to the jurisdiction, the City asserted it was entitled to governmental immunity from KLA's suit because the subject of the suit involved governmental functions, i.e., parks and recreational facilities, and it had not waived that immunity.

Following a hearing, the trial court denied the City's plea. This appeal followed.

### STANDARD OF REVIEW

Governmental immunity has two components: immunity from suit and immunity from liability. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity from suit deprives a court of subject matter jurisdiction over claims against political subdivisions of the state, including cities, absent legislative waiver. *Id.*; *Triple BB, LLC v. Village of Briarcliff*, 566 S.W.3d 385, 392 (Tex. App.—Austin 2018, pet. denied). If the legislature elects to waive immunity, it must do so by clear and unambiguous language. *See Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (citing TEX. GOV'T CODE ANN. § 311.034).

Immunity from suit is properly asserted in a plea to the jurisdiction. *Id.* at 612. Whether a trial court has subject matter jurisdiction, whether a plaintiff has alleged facts that affirmatively demonstrate subject matter jurisdiction, and whether undisputed evidence of jurisdictional facts establishes subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*,

–4–

133 S.W.3d 217, 226 (Tex. 2004); *see also Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

**DISCUSSION**

The City presents two issues: (1) whether it was engaged in a governmental function when it entered the license agreement with KLA and, if it was, (2) whether the license concerns "goods and services" as required to establish a waiver under chapter 27 of the Texas Local Government Code. We begin our discussion with the question of whether the City was engaged in a governmental or proprietary function when entering the license agreement.

**A. Governmental/Proprietary Function**

"Municipal corporations exercise their broad powers through two different roles: proprietary and governmental." *Wasson Interests, Ltd. v. City of Jacksonville ("Wasson II")*, 559 S.W.3d 142, 146 (Tex. 2018) (quoting *Gates v. City of Dallas*, 704 S.W.2d 737, 738 (Tex. 1986)). The governmental/proprietary dichotomy recognizes that immunity protects a governmental unit from suits based on its performance of a governmental function but not a proprietary function. *Id.* This distinction between governmental and proprietary functions applies to breach of contract claims. *Wasson Interests, Ltd. v. City of Jacksonville ("Wasson I")*, 489 S.W.3d 427, 439 (Tex. 2016).

Generally, governmental functions consist of a municipality's activities "in the performance of purely governmental matters solely for the public benefit."

–5–

*Wasson II*, 559 S.W.3d at 147. These functions historically have consisted of activities "normally performed by governmental units," such as "police and fire protection." *Id*. (quoting Joe R. Greenhill and Thomas V. Murto III, *Governmental Immunity*, 49 TEX. L. REV. 462, 463 (1971). Proprietary functions, by contrast, are those "performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality," and "not as an arm of the government." *Id*. These are usually activities "that can be, and often are, provided by private persons." Greenhill at 463.

Whether a municipal action challenged in a breach of contract case is proprietary or governmental is governed by the analysis in the supreme court's *Wasson II* opinion. There, the court explained that even in breach of contract cases, "courts should be guided . . . by the [Tort Claims Act's] treatment of the proprietary-governmental distinction." *Wasson II*, 489 S.W.3d at 439.

The Tort Claims Act provides a non-exclusive list of thirty-six governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). Among those functions are "parks and zoos" and "recreational facilities, including but not limited to swimming pool, beaches, and marina." *Id*. § 101.0215(a)(13), (23).

Here, the license was an agreement to allow KLA non-exclusive "recreational use" of a portion of city park land limited to "soccer practice and soccer games" and in accordance with an annual use calendar. In exchange for its use of the City's fields, KLA agreed to improve and maintain them. The nature of this license was

the use and maintenance of City owned, operated, and controlled park and recreation facilities, which falls within statutorily designated governmental functions. *See id.*

In its brief, KLA relies on the four-factor test set out in *Wasson II* to support its argument that the City acted in its proprietary capacity. But, as this Court has previously determined, that test does not apply if the function is listed in the statute. *See City of Lancaster v. White Rock Comm'l, LLC*, No. 05-17-00583-CV, 2018 WL 6716932, at *4 (Tex. App.—Dallas Dec. 21, 2018, pet. denied) (mem. op.) ("[B]ecause the functions expressly covered by the 380 Agreement are expressly identified in section 101.0215 as governmental functions, we do not apply the [four-part] *Wasson II* test. We are instead guided by section 101.0215's treatment of those functions."); *see also Elizabeth Benavides Elite Aviation, Inc. v. City of Laredo*, No. 04-19-00717-CV, 2020 WL 2044678, at *3 (Tex. App.—San Antonio Apr. 29, 2020, no pet.) (mem. op.) (explaining court does not analyze four factors when function expressly designated as governmental function in statute); *M.E.N. Water Supply Corp. v. City of Corsicana*, 564 S.W.3d 474, 487 (Tex. App.—Waco 2018, pet. denied) (stating that if "governmental action is not expressly listed in section 101.0215," courts analyze four-factor *Wasson II* test); *City of Merkel v. Copeland*, 561 S.W.3d 720, 724 (Tex. App.—Eastland 2018, pet. denied) (same); *City of Westworth Vill. V. City of White Settlement*, 558 S.W.3d 232, 244 (Tex. App.—Fort Worth 2018, pet. denied) ("Because the parties' agreement does not fall under the TTCA's express provisions, we must apply the proprietary-governmental dichotomy

approach as established by *Wasson II.*"). We conclude the City engaged in a governmental function when it entered the non-exclusive revocable license agreement with KLA; thus, the City is immune absent a waiver by the legislature. We therefore sustain the City's first issue.

## B. Waiver of Immunity Under Chapter 271

We next turn to the City's second issue and consider whether chapter 271 of the local government code provided a waiver of immunity.

Section 271.152 of the local government code provides a "limited waiver of immunity for local governmental entities that enter into certain contracts." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 412 (Tex. 2011). Specifically, a local governmental entity that "enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of contract, subject to the terms and conditions of this subchapter." TEX. LOC. GOV'T CODE ANN. § 271.152. The statute defines a "contract subject to this subchapter" as a "written contract stating the essential terms of the agreement providing goods or services to the local governmental entity." *Id*. § 271.151(2(A).

Relying on *Lubbock County Water Control & Improvement District v. Church & Akin*, 442 S.W.3d 297 (Tex. 2014), the City argues the license agreement at issue does not fit within the terms of the statute because the contract is not an agreement "providing goods or services." Rather, it argues that KLA has "at most" agreed to provide "certain soccer field improvements" in exchange for use of the soccer fields.

It contends in determining whether a contract is one providing goods and services to a local government, a key test is whether there is money due under the contract, and there is no money due under this contract.

Chapter 271 does not define "services," but the supreme court has interpreted the term in this context as "broad enough to encompass a wide array of activities." *Kirby Lake Dev., Ltd., v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010). It generally includes any "act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed" but would not extend to "contracts in which the benefit that the local government entity would receive is an indirect, attenuated one." *Church & Akin*, 442 S.W.3d at 302–03. The agreement to provide services need not be the primary purpose of the agreement. *Kirby Lake Dev.*, 320 S.W.3d at 839.

In the case relied upon by the City, Church & Akin leased a marina from Lubbock County Water Control and Improvement District. 442 S.W.3d at 299. The lease prohibited Church & Akin from using the premises for any other purpose than as a marina without consent. *Id*. Church & Akin agreed to pay a fixed amount in rent plus a percentage of gross sales. *Id*.

The Water District terminated the lease during its second term, and Church & Akin sued for breach of contract. The Water District filed a plea to the jurisdiction alleging governmental immunity for which there was no waiver. The trial court denied the plea, and the court of appeals affirmed. *Id*. at 299.

The principal issue on appeal to the supreme court was whether the lease was an agreement to provide goods and services under chapter 271. The Water District argued the contract was a lease of real property, not an agreement for provision of goods and services, while Church & Akin argued that by operating the marina, it was providing a service to the Water District. *Id.* at 301–02.

The supreme court ultimately determined it was not an agreement for marina services. *Id.* at 305. As the court explained, the contract did not require Church & Akin to provide marina-operation services; rather, it only restricted Church & Akin from using the premises for a different purpose without consent. *Id.* at 303. As the court stated: "When a party has no right under a contract to receive services, the mere fact that it may receive services as a result of the contract is insufficient to invoke chapter 271's waiver of immunity." *Id.* Moreover, the court said that even if the lease could be construed as a contractual agreement to use the property as a marina, the provision of marina services to the Water District constituents would not constitute the provision of such services to the Water District itself; thus, the operation of the marina only indirectly benefited the Water District. *Id.* 303–04.

Unlike the lease agreement in *Church & Akin*, the license here required KLA to (1) improve or rehabilitate the three fields to a standard that reasonably equated to a FIFA-certified playing surface using industry standard components and materials form a FIFA-approved turf manufacturer and (2) to provide year-round maintenance services on those fields. Those maintenance services included keeping

the natural grass field and common areas abutting the artificial fields watered, mowed, and trimmed; clearing the fields of debris, weeds, and foliage; seeding and fertilizing the grass field; and sweeping and dragging the artificial turf fields weekly. Thus, the City's license agreement provided for both goods and services, which provided more than an indirect benefit to the City in that the City would have within its public park three professional-grade soccer fields maintained by KLA for thirty years.

Nevertheless, the City argues that when determining whether a contract is one for providing goods or services to a local government, a key test is whether there is money due under the contract to the provider of those goods and services, and the City did not agree to pay KLA for any goods or services in the license. In *Church & Akin*, the court noted that when chapter 271 waives immunity for a contract claim, it limits a claimant's recovery to "the balance due and owed by the local governmental entity under the contract," plus attorney's fees and interest. *Id*. at 304 (citing TEX. LOC. GOV'T CODE ANN. § 271.153(a)(1)(3)). Thus, the court explained, construing the chapter's waiver of immunity and limitation on damages, the waiver "will typically apply only to contracts in which the governmental entity agrees to pay the claimant for the goods or services that the claimant agrees to provide." *Id*. The court observed that there was no amount due and owed from the Water District to Church & Akin, and found that fact supported its conclusion that the lease was not an agreement for goods or services. *Id*. at 305. The court, however, did not

–11–

suggest this factor was dispositive. To the contrary, the court stated: "While a party may agree to provide goods or services in exchange for something other than payment, the absence of any agreement by the governmental entity to pay for the goods or services *may* indicate that the claimant did not in fact agree to provide goods or services to the governmental entity." *Id*. at 305 (emphasis added).

In sum, we find the facts in *Church & Akin* distinguishable to those here. More akin to this case is one from our sister court, *Houston Community College System v. HV BTW, LP*, 589 S.W.3d 204 (Tex. App.—Houston [14th Dist.] 2019, no pet.). There, Houston Community College System (HCC) owned a vacant lot, and the HV BTW (the Partnership) owned an adjacent commercial building. The Partnership approached HCC about obtaining an easement on the vacant land. 589 S.W.3d at 208. HCC agreed to grant the easement and, in consideration, the Partnership agreed to construct a parking lot. *Id*. A dispute subsequently arose, and the Partnership sued HCC for breach of contract and declaratory judgment. HCC filed a plea to the jurisdiction claiming immunity from suit. *Id*. at 208–09.

One of the issues on appeal was whether the Partnership, in agreeing to construct parking facilities on the property, agreed to provide a service to HCC such that the agreement fell within chapter 271. HCC argued the agreement was not a contract for services because "an easement is an interest in land" and HCC did not receive a direct benefit. *Id*. at 210. After considering *Church & Akin* and other cases, the court concluded that construction of the parking facilities as consideration

–12–

for the grant of the easement was a service to HCC for purposes of chapter 271. *Id.* 212.

Likewise, we conclude that improving, rehabilitating, and maintaining the soccer fields as consideration for nonexclusive use of the fields satisfies the requirements of an agreement for providing goods and services to the City. Accordingly, we conclude chapter 271 of the local government code waives the City's immunity against KLA's contract claims. We overrule the City's second issue.

We affirm the trial court's order denying the plea to the jurisdiction.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

200659F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF MCKINNEY, TEXAS, Appellant

No. 05-20-00659-CV     V.

KLA INTERNATIONAL SPORTS MANAGEMENT, LLC, Appellee

On Appeal from the 471st Judicial District Court, Collin County, Texas Trial Court Cause No. 471-02979-2020.
Opinion delivered by Justice Reichek; Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's order denying the City of McKinney's plea to the jurisdiction is **AFFIRMED**.

It is **ORDERED** that appellee KLA INTERNATIONAL SPORTS MANAGEMENT, LLC recover its costs of this appeal from appellant CITY OF MCKINNEY, TEXAS.

Judgment entered February 4, 2021.